T.C. Summary Opinion 2016-84

UNITED STATES TAX COURT

GUTHRIE WASHAURWA CHIBANGUZA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5025-13S.                         Filed December 13, 2016.

Guthrie Washaurwa Chibanguza, pro se.

<u>Derek P. Richman</u>, for respondent.

SUMMARY OPINION

GALE, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant

---

[1]All section references are to the Internal Revenue Code of 1986, as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's Federal income tax for 2009 of $19,916 and an accuracy-related penalty under section 6662(a) of $3,983. Following concessions by the parties,[2] the issues for decision are whether petitioner had unreported income for 2009 in the amount respondent determined and whether petitioner is liable for the section 6662(a) accuracy-related penalty.[3]

Background

Some of the facts are stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioner resided in Florida at the time he filed his petition.

At the time of trial petitioner held a degree in mathematics from the State University of New York and had held himself out as a tax return preparer for approximately 15 years. During the year at issue petitioner owned a 95% interest in Tax Connection, Inc. (TCI), an S corporation through which he performed tax

[2]Respondent concedes that petitioner did not receive a taxable distribution of $3,469 from a retirement account. Respondent also concedes that his determination of the unreported gross receipts of petitioner's S corporation for 2009 was overstated by $1,837.

[3]Respondent also made computational adjustments to the credits petitioner claimed for 2009 under secs. 21, 25A, 32, and 36A.

return preparation services. Petitioner did not maintain adequate books and records of TCI's gross receipts for 2009.

In 2008 and 2009 petitioner resided with his then companion, Sherry Nicholas, and her two children. He also had two daughters of his own who resided with him, one of whom was disabled. Petitioner prepared Ms. Nicholas' 2008 Federal income tax return, which claimed a refund of $3,851 and showed his post office box as her address. Petitioner also assisted his cousin in preparing his cousin's 2008 Federal income tax return, claiming a refund of $7,570.

Petitioner had not attained the age of 55 as of December 31, 2009.

During 2009 petitioner maintained two bank accounts in his name and two in TCI's name at Wachovia Bank (Wachovia accounts). Petitioner made regular deposits to and withdrawals from the Wachovia accounts. On February 6, 2009, one of the Wachovia accounts received a $3,851 deposit denominated "Automated Credit US Treasury 220 Tax Refund". The corresponding account statement records that a $2,000 cash withdrawal was made from the same account that same date.

On March 27, 2009, another of the Wachovia accounts received a $7,570 deposit denominated "Automated Credit US Treasury 220 Tax Refund". The corresponding account statement records that a $300 ATM cash withdrawal was

made that same day and that a $6,000 counter cash withdrawal was made on March 30, 2009.

On April 6, 2009, petitioner deposited a $700 check from Patricia Gebara, with "Balance $300" written on the memo line, into one of the Wachovia accounts. On June 3, 2009, petitioner deposited a $300 check from Ms. Gebara into the same Wachovia account.

On May 4, 2009, petitioner deposited a $75 check issued to the order of TCI from the State of Florida Department of Financial Services into one of the Wachovia accounts.

On May 18, 2009, a $250 deposit denominated "Automated Credit U.S. Treasury 310 SSI ERP" was made into one of the Wachovia accounts. Two separate $674 deposits denominated "Automated Credit U.S. Treasury 310 Supp Sec" were made into the same account on May 1 and June 1, 2009, respectively.

TCI filed a Form 1120S, U.S. Income Tax Return for an S Corporation, for 2009 which reported gross receipts of $40,050, claimed total deductions of $40,008, and reported the net as ordinary income of $42. Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 2009 which claimed two dependents identified as his daughters. Petitioner did not report any distributive share of income from TCI. After claiming the standard deduction and exemptions, as well

as credits under sections 21, 25A, 32, and 36A of $76, $850, $4,248, and $400, respectively, petitioner reported a tax liability of zero and claimed a refund of $5,498.

Respondent conducted an examination of TCI's and petitioner's 2009 returns. As a part of his examination of TCI's return, respondent performed a bank deposits analysis of the Wachovia accounts. On the basis of the bank deposits analysis, respondent determined that TCI had failed to report $78,504 of gross receipts for that year. After adding this amount to the $42 TCI had previously reported, respondent determined that TCI had ordinary income of $78,546 for 2009.

Respondent issued a notice of deficiency to petitioner determining that he had underreported his distributive share of income from TCI, as the holder of a 95% interest therein, by $74,619.[4] The notice also determined that petitioner had received a taxable distribution of $3,469 from a retirement account.[5] The notice

_____

[4]That figure is 95% of $78,546. Although two of the Wachovia accounts respondent examined as part of his bank deposits analysis were held by petitioner outright rather than by TCI (which was 95% owned by petitioner), respondent's deficiency determination treated petitioner as having failed to report only 95% of the taxable deposits in the two Wachovia accounts he owned outright. Respondent has not sought any increase in the determined deficiency to take account of petitioner's outright ownership of two of the accounts.

[5]Respondent has conceded this determination. See supra note 2.

also made the computational adjustments to petitioner's claimed credits as previously noted and determined that he was liable for an accuracy-related penalty under section 6662(a).

Petitioner filed a timely petition for redetermination.

## Discussion

### Unreported Income and the Commissioner's Presumption of Correctness

Generally, a taxpayer bears the burden of proving error in the Commissioner's determinations in a notice of deficiency. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). For determinations of unreported income, the Court of Appeals for the Eleventh Circuit has held that the Commissioner's determination of unreported income is entitled to a presumption of correctness only if the determination is supported by an evidentiary foundation linking the taxpayer to an income-producing activity.[6] See Blohm v. Commissioner, 994 F.2d 1542, 1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636. A determination that is unsupported by any evidence is arbitrary and erroneous, see Weimerskirch v. Commissioner, 596 F.2d 358, 362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977), but the required showing is minimal, see Blohm v. Commissioner, 994 F.2d at 1549

_____

[6]Because any appeal in this case, but for the provisions of sec. 7463, would lie to the Court of Appeals for the Eleventh Circuit, see sec. 7482(b)(1)(A), the Court follows the precedent established in that circuit, see Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).

(citing <u>Carson v. United States</u>, 560 F.2d 693, 697 (5th Cir. 1977)).  Once the Commissioner produces evidence linking the taxpayer to an income-producing activity, the presumption of correctness applies and the burden of production shifts to the taxpayer to establish that the Commissioner's determination is arbitrary or erroneous.  <u>Blohm v. Commissioner</u>, 994 F.2d at 1549.

There is no dispute that petitioner (through TCI) performed tax return preparation services for compensation during 2009.  Petitioner's income-producing activity having been established, respondent has laid the requisite evidentiary foundation for the unreported income determination.  Petitioner therefore retains the burden of showing error in it.[7]

<u>Bank Deposits Analysis</u>

Gross income includes "all income from whatever source derived".  Sec. 61(a).  A taxpayer is required to maintain adequate books and records sufficient to establish his or her income.  <u>See</u> sec. 6001; <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 867 (1991), <u>aff'd</u>, 959 F.2d 16 (2d Cir. 1992); sec. 1.6001-1(a), Income Tax Regs.

---

[7]Sec. 7491(a) may also shift the burden of proof to the Secretary concerning any factual issue relevant to ascertaining the taxpayer's liability for income tax where the taxpayer introduces credible evidence and has satisfied certain other conditions, including that the taxpayer maintained all records required by the Internal Revenue Code.  Sec. 7491(a)(2)(B).  Since, as discussed <u>infra</u> p. 9, petitioner has failed to maintain such records for 2009, sec. 7491(a) does not apply in this case.

When a taxpayer fails to maintain sufficient records to allow the determination of his correct tax liability, the Commissioner may reconstruct the taxpayer's income using any method that clearly reflects the taxpayer's income. See sec. 446; Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989). The reconstruction need only be reasonable. Petzoldt v. Commissioner, 92 T.C. at 687. One established method of reconstructing a taxpayer's income when the taxpayer has inadequate records and large bank deposits is the bank deposits method. See DiLeo v. Commissioner, 96 T.C. at 867.

Bank deposits are prima facie evidence of income. Id. at 868. The bank deposits method of determining income assumes that all the money deposited into a taxpayer's bank accounts during a specific period constitutes gross income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964). The Commissioner, however, must take into account any nontaxable source or deductible expense of which he has knowledge. Id. The method employed is not invalidated even if the calculations of the Commissioner are not completely correct. DiLeo v. Commissioner, 96 T.C. at 868. Once the Commissioner has made this prima facie case, the taxpayer bears the burden of showing that the deposits made into his or her account represent nontaxable income. See id. at 869.

Respondent asserts that he was obliged to reconstruct TCI's gross receipts using the bank deposits method because petitioner failed to maintain adequate books and records for TCI. At trial petitioner contended that he maintained sufficient records for TCI, yet he failed to produce any such records. We consequently find that petitioner failed to maintain adequate books and records for TCI and further conclude that it was reasonable for respondent to use the bank deposits method to reconstruct TCI's gross receipts for 2009 in these circumstances. See id. at 867.

As part of his bank deposits analysis, respondent examined the Wachovia account records for January to June 2009. The analysis records the total deposits, nontaxable transfers between accounts, nontaxable deposits, and net taxable deposits that respondent determined for each monthly period within a given account. Respondent determined on the basis of this examination that TCI received $118,554 of net taxable deposits between January and June 2009--$78,504 more than the $40,050 of gross receipts TCI reported for 2009. Respondent therefore determined that TCI had underreported gross receipts by $78,504 and made a corresponding determination that petitioner had underreported his distributive share of TCI's income by $74,619.[8]

_____

[8]This figure is 95% of the sum of the $78,504 in gross receipts that TCI
(continued...)

Petitioner does not contest almost $64,000 of the unreported gross receipts determined in respondent's analysis. However, petitioner argues that there are seven discrete instances in which respondent erroneously treated a total of $14,583 of nontaxable deposits as gross receipts of TCI. Respondent has conceded $1,837 of this amount,[9] leaving $12,746 in dispute. We address each of petitioner's remaining contentions in turn.

Petitioner first argues that respondent erroneously treated as a taxable deposit a $3,851 U.S. Treasury tax refund deposit made on February 6, 2009. That is because, petitioner contends, the deposit was his companion Ms. Nicholas' tax refund for 2008, which was deposited into the Wachovia account. Petitioner further testified that he withdrew $2,000 and gave it to Ms. Nicholas and that the remainder was left in the account to cover the living expenses of Ms. Nicholas and her two children, who were residing with him.

We accept petitioner's testimony because it is corroborated by documentary evidence. The $3,851 U.S. Treasury tax refund deposit matches the amount of the refund claimed on Ms. Nicholas' 2008 return, which is in evidence. The relevant

---

[8](...continued)
omitted from its return plus the $42 of TCI's reported ordinary income for 2009 that petitioner failed to report on his return.

[9]See supra note 2.

Wachovia account statement records a $2,000 cash withdrawal on the same day as the U.S. Treasury tax refund deposit. Ms. Nicholas' 2008 return further corroborates that she had two children, and she showed petitioner's post office box as her address on that return. Overall, we are persuaded that the $3,851 deposit at issue was given to Ms. Nicholas or used for her benefit because it was her money, not petitioner's. It should therefore be treated as a nontaxable deposit, and respondent's determination of unreported income is erroneous to that extent.

Petitioner also contends that respondent erroneously treated as a taxable deposit another $7,570 U.S. Treasury tax refund deposit made on March 27, 2009. Petitioner testified that in this instance the deposit represented his cousin's tax refund--deposited into petitioner's account because the cousin did not have a bank account--which petitioner paid over to his cousin in cash. Although the cousin's tax return is not in the record, we are persuaded on the basis of petitioner's treatment of Ms. Nicholas' refund that petitioner occasionally arranged for the deposit, into either his own or TCI's bank accounts, of the tax refunds of persons close to him, in connection with his providing them with tax return preparation services. The Wachovia account record listing the $7,570 U.S. Treasury tax refund deposit also shows a $300 ATM cash withdrawal on March 27, 2009, and a $6,000

cash counter withdrawal on March 30, 2009, the next business day.[10] Petitioner testified that he was unable to withdraw more than $300 on March 27, 2009, because the bank had placed restrictions on withdrawals against the U.S. Treasury tax refund deposit.

We are persuaded by petitioner's testimony. It is common banking practice to place temporary withdrawal restrictions on large deposits as well as limits on the size of ATM withdrawals. As of March 26, 2009, the day before to the $7,570 U.S. Treasury tax refund deposit, the Wachovia account in question had a $5,000 balance. Thus, it is highly plausible that petitioner was able to make a $300 ATM cash withdrawal from the existing funds in the account on the day of the U.S. Treasury tax refund deposit but was temporarily unable to make a $6,000 withdrawal against the account funds as augmented by that deposit. Furthermore, there were no cash withdrawals of the magnitude of the $6,000 withdrawal in the three months preceding and the three months that followed this withdrawal. Thus, we are satisfied from the circumstantial evidence that petitioner transferred $6,300 of the $7,570 U.S. Treasury tax refund deposit to his cousin as he testified. The disposition of the remaining $1,270 is unexplained. We therefore conclude that

---

[10]March 27, 2009, was a Friday, and March 30, 2009, was a Monday.

petitioner has shown that $6,300 of the deposit is nontaxable and that respondent's determination of unreported income is erroneous to that extent.

Petitioner's third contention is that respondent erroneously treated as taxable deposits a $700 deposit and a $300 deposit made on April 6 and June 3, 2009, respectively. Petitioner testified that these deposits reflected repayments of a $1,000 loan he had made to Ms. Gebara.[11] To substantiate his claim petitioner introduced copies of checks that Ms. Gebara wrote to him for $700 and $300 that had the same dates as the dates of the deposits he made in corresponding amounts (as recorded in the relevant Wachovia account statement). The memo line of the first check, for $700, contains the notation "Balance $300". This memo line, coupled with the subsequently written check from Ms. Gebara for $300, persuades us that petitioner indeed lent $1,000 to Ms. Gebara, was repaid by her, and deposited the $700 and $300 repayment checks as he claims. We therefore conclude that petitioner has shown that the $700 and $300 deposits were from a nontaxable source. Accordingly, respondent's determination of unreported income is erroneous to this extent.

---

[11]Deposits relating to loan repayments are nontaxable and must be subtracted from total bank deposits to arrive at gross receipts. See United States v. Boulet, 577 F.2d 1165, 1167 (5th Cir. 1978); see also Johnson v. Commissioner, T.C. Memo. 1994-350; Williams v. Commissioner, T.C. Memo. 1994-275.

Petitioner next contends that respondent erroneously treated as taxable a $250 deposit made on May 18, 2009, denominated "Automated Credit U.S. Treasury 310 SSI ERP". Petitioner contends that this deposit reflected a Supplemental Security Income (SSI) payment to his disabled daughter from the Social Security Administration that he received as a "representative payee".[12] Respondent claims that petitioner has provided no proof to support these assertions beyond his self-serving testimony.

We disagree. Respondent has not disputed that petitioner's daughter was disabled. We infer in the circumstances that "SSI" as used in the electronic deposit description refers to an SSI payment. See Social Security Act, 42 U.S.C. secs. 1381 and 1381a (2006). This conclusion is bolstered by the fact that respondent treated as nontaxable two other $674 electronic deposits denominated "Automated Credit U.S. Treasury 310 Supp Sec" which we also infer represented SSI payments.[13] Respondent apparently accepted for purposes of his bank deposits

---

[12]An individual's SSI payments may be made to a representative payee if the Commissioner of Social Security determines that it would be in the individual's best interest. Social Security Act, 42 U.S.C. sec. 1383(a)(2) (2006).

[13]Petitioner testified that the two $674 deposits represented his daughter's regular monthly SSI payments, whereas the $250 deposit represented a one-time adjustment received by all SSI recipients. Given the similarities in the denomination of these deposits, we find petitioner's testimony credible in this regard.

analysis that petitioner received these two payments in a representative capacity for his daughter. SSI payments are not taxable. See Bannon v. Commissioner, 99 T.C. 59, 62-63 (1992) (acknowledging the "general welfare doctrine" of income exclusion); Bailey v. Commissioner, 88 T.C. 1293, 1299-1301 (1987) (same); Graff v. Commissioner, 74 T.C. 743, 751-752 (1980) (same), aff'd, 673 F.2d 784 (5th Cir. 1982); cf. Notice 99-3, 1999-1 C.B. 271. We therefore conclude that respondent erroneously treated this $250 deposit as taxable. Respondent's determination of unreported income is erroneous to that extent.

Last, petitioner argues that respondent erroneously included as a taxable deposit a $75 check from the State of Florida Department of Financial Services. Petitioner claims the deposited check represented a State employment tax refund. Even if we credit petitioner's testimony concerning this check, State tax refunds are includible in income for the year received to the extent they were deducted for the previous year. See Maines v. Commissioner, 144 T.C. 123, 130-131 (2015); see also Elbaz v. Commissioner, T.C. Memo. 2015-49. Petitioner has offered no evidence indicating whether TCI paid or deducted Florida State employment taxes for a prior year. We therefore conclude that respondent's inclusion of the $75 check from the State of Florida as a taxable deposit was not erroneous.

Penalty

Respondent determined an accuracy-related penalty under section 6662(a) and (b)(1) and (2) on the basis of negligence or disregard of rules or regulations and a substantial understatement of income tax. In general, the Commissioner has the burden of production with respect to the imposition of additions to tax and penalties and must offer sufficient evidence to indicate that imposing them is appropriate. Sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner has satisfied this burden, the burden shifts to the taxpayer to show that it is inappropriate to impose the penalty because of exculpatory factors, including reasonable cause. Higbee v. Commissioner, 116 T.C. at 446-447.

Section 6662(a) and (b)(1) and (2) imposes a 20% penalty on any underpayment of tax attributable to negligence or disregard of rules and regulations or a substantial understatement of income tax, respectively. "'[N]egligence' includes any failure to make a reasonable attempt to comply" with the internal revenue laws. Sec. 6662(c). It connotes "a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g 43 T.C. 168

(1964), and aff'g T.C. Memo. 1964-299), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). This includes "any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs. In general, an "understatement" of income tax is the excess of the amount of tax required to be shown on the return over the amount of tax actually shown on the return. Sec. 6662(d)(2)(A). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Id. para. (1)(A).

No penalty is imposed with respect to any portion of an underpayment if the taxpayer acted with reasonable cause and in good faith with regard to that portion. Sec. 6664(c)(1). That determination is made case by case, depending on the facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Those circumstances include the experience, knowledge, and education of the taxpayer. Id.

Respondent has met his burden of production with respect to petitioner's negligence in that he has demonstrated that petitioner, despite his occupation as a tax return preparer, failed to report his substantial distributive share of TCI's taxable income and failed to maintain adequate records demonstrating TCI's gross receipts for 2009. Petitioner did not even dispute almost $64,000 of the unreported gross receipts that respondent determined. He has not demonstrated that he had

reasonable cause for the underpayment. We therefore hold that petitioner's underpayment is attributable to negligence.

In the event the Rule 155 computation indicates that petitioner's understatement of income tax for 2009 exceeds the greater of $5,000 or 10% of the amount of tax required to be shown on the return, we conclude that the underpayment for 2009 is also attributable to a substantial understatement of income tax for which petitioner has not shown reasonable cause.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.